May it please the Court, I am Dennis Zell. I represent Appellant Nanno Maldonado, who is here in the courtroom in the first row with his son. Your Honors, we have eight points in our brief, all of which we think merit your attention. But the arguments I would like to emphasize during my time today are the First Amendment arguments relating to equal protection, prior restraint, and substantive due process. The equal protection argument is essentially an under-inclusion argument. The question is, why do some commercial advertisers, such as CBS and Clear Channel, get to publish off-site commercial advertising in the landscaped freeway zone while Nanno Maldonado is barred? The record demonstrates that the blanket ban on off-site commercial speech is not equally applied. The blanket has a big hole in it. An unwritten policy allows many billboards in the landscaped zones to display off-site commercial advertising while Maldonado is prohibited. Is this separate from your grandfather argument, or is it related? It's latent. It's the same. It's essentially the same argument. I'm just trying to sort out the arguments, make sure I understand them. Right. The grandfathering argument, their reason for this unequal treatment is that the billboards are somehow grandfathered. The opening brief at pages 7 and 8 have references to the record showing that within the landscaped freeway zone, some owners are allowed to do off-site advertising, commercial advertising, and some are not. Let's assume that it's a grandfather issue or grandmother issue where the billboards at a certain point were grandfathered in, and then now we have these new ordinances, which has now been amended. How is that an equal protection violation if the grandfathering procedure is content neutral? Well, first of all, it's not content neutral. And second of all, it's a First Amendment issue because although the government can generally prefer one over the other in many, many areas of economic activity, it does not have the same power to give preferences when it's a communicative activity. And in fact, there's- Could you give me some specifics of why it's not content neutral? Okay. It's based on the message that the previous billboard owners placed on their billboard. For instance, the ones that are allowed to do off-site advertising, commercial advertising, are those that have done off-site commercial advertising in the past. Nono Maldonado's billboard had on-site advertising, some non-commercial advertising in the past, and the state is punishing him and his predecessors for putting that less offensive. If you're going to say off-site commercial advertising is more offensive than the non-commercial advertising, Nono Maldonado is being punished because his billboard previously published less offensive material. Those are the cases- Let me just get it straight. You're saying that Clear Channel or whomever who had commercial advertising and is grandfathered in is in contrast to him who had non-commercial speech and he's not permitted to come under the grandfather clause? Right. Usually when we're talking about grandfathering in the land use context, we're saying it's grandfathered because the structure was built before the law took effect. This case is different than every other billboard case that has been decided because Mr. Maldonado's structure was built in 1956, and along with all these other-the record actually doesn't even say when Clear Channel and CBS's billboards were built, and Caltrans doesn't even keep records going back more than five years. But we have affirmatively shown that it was built-our billboard was built with a permit in the 50s. Correct. Where's the content problem? That's what I'm trying to get at. Okay. Well, the content-well, so the content problem is that the factor which allows these other competitors to post messages is the fact that they in the past posted off-site commercial advertising, and Mr. Maldonado did not. In the First Circuit cases I cited, the Ackerley case, the City of Somerville addressed this issue, and the U.S. Supreme Court has addressed the selectivity of speakers as being a form of content-based discrimination in the greater New Orleans case where the majority said that, hey, even under intermediate scrutiny, a law which discriminates based on the content of, you know, who the speaker is, is a violation of the First Amendment, not to mention the Equal Protection Clause. The-I'd like to point out that there's some confusion with respect to the content, to determine whether something is content-neutral or content-based. And the City of Lake Oswego Ninth Circuit billboard case had used a test where it says, the test turns on whether the law singles out certain speech for differential treatment based on the ideas expressed. Now, that is a test for content neutrality, but it's the most-it's the strictest test. What that test determines is whether there is viewpoint discrimination. That point was noted in the Salantic case out of the Eleventh Circuit for-it's cited in the briefs. And the Salantic court noted that, more recently, the court has receded from this formulation, returning its focus on the law's own terms rather than its justification. Then it quoted City of Cincinnati. True, there is no evidence that the city has acted with animus toward the ideas contained in respondents' publications. But just last term, we expressly rejected the argument that discriminatory treatment is suspect under the First Amendment only when the legislature intends to suppress certain ideas, quoting Simon and Schuster, 502 U.S. 105. Accordingly, the court held, under the city's news rack policy, whether any particular news rack falls within the ban is determined by the content of the publication resting inside the news rack. That's Salantic at footnote eight. And actually, this court, the Ninth Circuit, has recently noted that there are multiple tests to determine whether a statute is content-based. In the very recent case of Center for Bioethical Reform Inc. versus Los Angeles Sheriff's Department, which doesn't have a site yet, it noted that the read-the-message test, that's the test the Ninth Circuit, the officer-must-read-it test, that's what the Ninth Circuit used in FOTE, that's what the Ninth Circuit used in ACLU, said the read-the-message test, however, cannot encompass the universe of content-based statutes because the test does not fully account for the heckler's veto line of cases. So here's the Ninth Circuit saying, look, there's multiple tools a court can use to determine whether something is content-based. Well, but if we're getting a little further afield in the most recent case, if we're really looking at signs, and if we go back in the Ninth Circuit precedent, probably dating back at least a couple of decades, we've already said, in effect, that on-site, off-site and commercial, non-commercial is a content-neutral approach. So the only difference, it seems to me, is if you take that package and say, well, it's content-neutral, according to the Ninth Circuit precedent, but we do add a new part to it, which is the grandfather issue, how does that change the content? If I were to go under, I mean, forget rational, but let's say it's somewhere between intermediate and strict, and I don't know which one it is. Okay. The off-site versus on-site distinction of commercial speech has been, that was decided in metromedia, stare decisis, court has no discretion. Previous Ninth Circuit cases have recognized that. All of the previous Ninth Circuit cases have specifically noted that they were not considering equal protection issues, and I cite that. There's a footnote in my brief where I cite all the previous cases where the Ninth Circuit has expressly said, we're not deciding this under the equal protection clause. Moreover, this is here the State is distinguishing between two forms of the exact same speech, off-site commercial speech. Clear Channel can do off-site commercial speech. That's only because they were there before. Well, the billboards, with respect, Your Honor, the record demonstrates that the billboard structure were, Nono's was built before the law took effect, too. So something else is going on, and what that something else is, is what was placed on the billboard, the content. In order for an officer, enforcement officer, to cite Nono for placing noncommercial speech, he has to read the message up there. And so both under the read the message test and the speaker-based test, which this Court, the Ninth Circuit, has never considered. So none of the prior billboard cases in this jurisdiction applied the speaker-based test of content neutrality. So those cases aren't controlling in this case. With that, I'd like to reserve about eight minutes. I wanted to ask you just a quick question on the area. What authority do you rely on that gives the federal courts the authority to review a state court injunction by a California court of appeals in People v. Maldonado? That's the, well, it's the All Writs Act gives the primary control. The Anti-Injunction Act has an exception, and that's the, boy, it's cited in the briefs. It's a Section 5 of the 14th Amendment expressly authorizes Congress to make laws. It's Foster, I think, to enjoin state court proceedings. 1983, it's Mitchum v. Foster, I think. It's in the brief, but it's an express exception to the rule that you can't do that. And we're actually enjoining a party, Caltrans, but even if you're to assume that it's the state court, we're actually enjoining that 1983 is an express exception. And that's, I'll find it when I sit down. Okay. Thanks. Thank you. Thank you. Good morning, Your Honors. I'm Ronald W. Beals, representing Will Kepton as Director of the Department of Transportation. First of all, I would agree with counsel's tactic admission that the recent amendment to the California law has totally taken care of his first seven points in his argument. Since we now have a valid substitution clause, there can no be – there cannot be any question that nonconforming speech is allowed any place a commercial or on-site or off-site sign would be allowed. And I think that is the genesis of those first seven points. I have a problem with your standing argument that I wanted to ask you. Sure. Can you explain the contours of your standing argument? Is it your position that the existence of the Redwood City Ordinance prohibiting off-site premise signs denies Maldonado's standing to advance any constitutional challenge against the COAA, or that he may only advance those constitutional arguments against the COAA that would also defeat the Redwood Ordinance, or that he can only advance constitutional arguments against the COAA that have no counterpart in the Redwood Ordinance? That would – the last position would be the position, we would argue, that even if this Court gave him all the relief he asked and found that the State Outdoor Advertising Act was totally unconstitutional, which is certainly not a finding I'd hope the Court would make, that he would still not be able to build his sign under the – or use his sign for off-premise purposes under the Redwood City Ordinance. While he said he built the sign pursuant to a permit in 1955, that was a building permit for an on-site sign only. His argument that the State distinction is based on the difference between the copy on a sign is totally incorrect. The grandfathered signs are signs that were permitted by the State. It does not matter what the copy on those signs are. If you drive down Bayshore Freeway where his sign is, some of those permitted signs will have on-prem – probably not on-premise copy. They will have commercial copy. During this election season, I'm sure a lot of them have political copy. The key is the State permit. He has never obtained a State permit. That is the difference between his sign and other signs that are grandfathered. It was not a copy distinction. It was a permitting distinction. If you had a State permit, and you could have gotten a State permit even if you had on-premise copy, commercial copy, non-commercial copy, if you met the time, place, and manner provisions in place at that time, the major one now is landscaping. The signs that have permitted State permits were grandfathered. They kept their permits. The Court below laid out the reasons why this is a valid reason. The State does not have the money to pay for these signs. That's the biggest reason. The Federal Government is not making their contribution, which they promised to make. It is still a valid use of a law, as Metro Media pointed out and several decisions of this Court have pointed out, even if you don't accomplish all your goals stated to remove all billboards in landscaped areas, if you're able to make incremental improvements, that is still a valid decision. Ginsburg. Going back to Judge Callahan's question, wouldn't it appear that under the Get Outdoors case from the Ninth Circuit that he would have standing here, even though he's not made a direct challenge to the Redwood ordinance, but the fact is that it's essentially the same challenge that would have to be made there? Well, I think you also have to look at the Beaumont decision, which this Court rendered last fall, where it stated, We find that the District Court correctly determined that Outdoor Media lacked a vested property right in its unapproved billboard permit application. Therefore, its procedural due process claim was properly dismissed on a standing argument. They found, as you would find here, that Mr. Maldonado has never had a State permit to have a billboard in compliance with the Outdoor Advertising Act. He lacked standing on that point. There is that case, I forget the exact site that we cited in our brief, where another district court said there was no standing to challenge an ordinance if under another provision of the ordinance. That's the Seventh Circuit case. Actually, we've kind of narrowed that a little in the Ninth Circuit. Okay. And the visiting judge is from the Sixth Circuit, so I can't. So you can't split the case. I can't plead there. Would you do one thing following the argument? The precise Redwood ordinance, Redwood City ordinance that's at issue, I'm not quite sure what it is, because it seems like whatever was cited in your brief when we go and try to find that, that's not the number of the Redwood City ordinance. I don't know if it's been renumbered or what, but if you would provide the court the ordinance, a copy of the ordinance and the citation that will help us following the argument, you can talk with the clerk about the mechanism for doing that. Certainly. Also in the supplemental pleadings, there is the specific application Mr. Maldonado made to keep his signs nonconforming status in Redwood City in 1999 or 2000, where he specifically alleged this was only an on-premise display. And that was in his presentation to the city. Was this a request for a permit before the law was changed? The City of Redwood City had an ordinance that required on-premise signs to be an amortization ordinance requiring them to be lowered and their size reduced. He applied for exemption from that on the grounds that his current sign would not be visible if it met those new criteria. The city granted that exception, ironically, because of the state sound wall that the state had built, which is 14 feet in front of the area. The sign is clearly visible above the sound wall, but if he had to meet the new So that's why the sign granted it specifically for on-site copy or off-site advertising, which, of course, the Court has pointed out, this circuit, since Metromedia and the Mesa cases and the three cases decided last year, has always affirmed the difference between on- and off-site signs. For the Equal Protection Clause, I'd point out that in the Beaumont case that this claims that the old ordinance violates the Equal Protection Clause. Because billboard operators are not a protected class, the city's distinction between off-site and on-site advertisers is sustained if rationally related to a legitimate government interest. Again, Metromedia and all sorts of cases have pointed out traffic safety, aesthetics. These are all valid government interests. I'd add in the case of landscaping freeways, you also have a substantial state investment in the landscaping that is also a legitimate government interest that's been cited in other cases. Metromedia found this distinction met the more stringent central Hudson test because off-site advertising with its periodic changing content presents a more acute problem than does on-site advertising, citing Metromedia and the clear channel decision of this case from this Court from 2003. The rationale also satisfies the lower hurdle of the rational basis review. So I think this Court has already decided that there is not an equal protection or a valid equal protection issue that Mr. Maldonado can present in this case. I think just if I heard his argument correctly, it wasn't completely an on-site, off-site argument. It was that you had prior people, including his, that were using, that were putting non-commercial speech on their signs, but that in his view the grandfathering related to commercial and non-commercial and therefore you needed to look at the content in order to determine that. Now, you have explained the grandfathering as relating to the permitting. It's just a permit issue. Once a permit is issued, we do not look at the copy. If you're a permitted sign. So if I come in and have the right piece of paper, my sign can continue. Correct. And the right piece of paper means you comply with the time, place and matter restrictions of the law. And the main one in California is not being adjacent to a landscaped freeway. It's not a terribly onerous requirement. California has 4,300 miles of freeway, and about 1,400 of them are classified as landscaped. No new off-site billboards are allowed in landscaped areas. That's been the law in California since 1953. Could he have gotten a permit if he'd applied in time? Yes. On his property. If he had applied up until at least 1967, he would have been granted a permit. I do not know why he did not apply. It is possible at the time the sign did not. The sign was always used for on-premise purposes. It was a Granny Goose potato chip factory. It had Granny Goose copy. I happened to be raised in Redwood City, so I actually remember the sign vaguely. It's part of my youth, although as you get older, you sort of forget these things. So this sign goes back before 1967? The sign was erected in 1955, 1956, as an on-premise copy for Granny Goose potato chips. It was not used for noncommercial speech, but it was used for an on-site commercial copy. He never got a state permit, so the sign is legally not a state-permitted sign, and it never has been. At this point, and since the area was classified as landscape, he could not legally get a permit, nor could anybody else on that property. It's not, you know, there is nobody in that area, and Mr. Maldonado does not allege anyone in any landscaped area in Redwood City, San Mateo County has ever been awarded an outdoor advertising permit in a landscaped area. This is a state law applied consistently throughout the state. So what can he use his billboard for? He can use it for any on-premise copy. If he converts it to a Granny Goose potato chip factory, he can put it back. Except for people just renting an office. Well, yeah, we do have this thing that's happened in California and it's happened in Seattle and other places where a person comes in and signs a lease, and as the record showed, and I agree with the Court that you do not have jurisdiction to review the State court decision, but if you happen to read it, there is a description that people basically signed a lease that gave them rights to use a sign. If they want to use an office, they can use an office as well. The regulations say it has to be the primary use of the property has to be the advertising advertised on the on-site sign. He can use it for his own business, and he can use it for noncommercial. Correct. And he can use it to advertise that he has spaces available for rent? In that building itself? Yes. As an on-site rental sign, sure. And if he wanted to sell his property, he could advertise it for this property for sale, this property for lease. If he rented out the whole building to a law office, they could put their sign up there. This game he played all during the 90s where he signed up people for quote-unquote as we have with other people throughout the State that have tried to do this. This is not a unique evasion of the State law. I have a question in terms of, and I'll ask it of Appellant's counsel as well, in terms of looking at the issues that are here. Does the existing law basically cover everything of the facts in this situation, or are there issues worthy of publication here that are not really covered by the existing law? This would not be an extension of the existing law, and this would just be a confirmation of the law as it stands and has stood since at least 1967. Well, does the Grandfather Clause, is there anything? The Grandfather Clause has not been specifically dealt with, to my knowledge, in a case that said that the California Outdoor Africa, and we do grandfather, not just in grandfathering. There are many signs that are grandfathered. In rural areas, the Highway Beautification Act's major contribution to beautification was to ban all signs in agricultural areas. But if you drive up 99 and the parts of 5 that used to be 99, you'll still see billboards in those ag areas. And those billboards have all been there since at least 1967. Well, they just seem to be the standing issue doesn't, by virtue of the fact of the arguments that both of you are making, doesn't seem to be exactly resolved. The standing issue, I don't think either of us have quoted the slam dunk. This case shows you have standing or don't have standing. There are cases that deal with signs in this area that have come to the conclusion that there is no standing because there is another ordinance or another part of the same ordinance that would prohibit a sign from being built. There's other situations, I think, where the courts have said. Let's think about that. I mean, I understand the logic, but there's something that's troubling about that in the sense of because, for example, the other ordinance may not be enforced. So often in these signs and other things where we have First Amendment, one of the arguments is, well, it's not enforced or it's enforced selectively or that sort of thing. So we don't even know that it would be enforced. So if he were to prevail, let's say, on the state ordinance, and then the other thing weren't enforced, then he would have himself a usable billboard, right? Why wouldn't he have standing to at least, you know, why can't he knock them down one by one if he wants? I understand the argument, and I can just tell you there are other courts that have concluded that because they do not want to spend their valuable judicial time because it is improbable that the sign would be built in any case because of a different intervening law. I understand the conceptual argument Your Honor is making, that there is a specific constitutional issue that's being presented. I'm very confident you'll decide it in my favor, so I've not panicked over the standing argument, but there is the issue of judicial economy that how many different lawsuits are going to be brought against how many different entities on the same basic issue. Well, standing and judicial economy don't exactly go together. I can't disagree with that, but I would. Like if you're a snail darter or one of those, you know, in one of the environmental cases, we've granted, or the U.S. Supreme Court has granted standing in some very small items. Yeah. I think standing is an issue that courts seem to have a fair amount of discretion on, and I would hope in this particular case discretion would go in our favor, but I understand the arguments the Court is making, and as I say, I don't have the slam dunk case. I do have that case from the Seventh Circuit where that court, for whatever reason, be it judicial economy or constitutional issues, concluded that they would not hear that case. Again, I'm not afraid to have this case heard on the merits. I think it's a case that will follow the other cases the Ninth Circuit issued last year. It's totally consistent with the same issues are raised, that there's a difference between nonconforming and conforming in the, I mean, noncommercial and commercial. There's a difference between a permitted sign and a nonpermitted sign. There's a difference between an on-premise and an off-premise sign. These are not new principles for this circuit. This case would just give us a chance to reaffirm it, and if the Court would like to take a step forward and say the equal protection argument does not mean that in every case where you have grandfathering, and remember, grandfathering applies to every land use ordinance, the States Coastal Act, the Tahoe Regional Planning Act. All of those acts have provisions that say from henceforward you cannot build a four-story building in this zone. Yes, there exists. The one difference is that usually they don't implicate the First Amendment, potentially. I understand that, and as many cases have pointed out, sign regulations is a blending of First Amendment concerns and land use concerns. Sign structures, regardless of their message, have a huge effect on the neighborhood, and that's without regard. And I think some signs, regardless of their message, are improper. You couldn't put a sign in front of a stoplight. No matter how compelling the First Amendment issue is, you couldn't put a sign with lights so bright that it's blinding people going down the street. So there is a safety component and a land use component to every sign ordinance. But, yes, there is a First Amendment issue, but the basic equal protection issue that's being made was a property rights issue in this case. We have given Mr. Maldonado everything he originally prayed for. He can put all the noncommercial copy he wants on his sign. But, of course, this is a pyrrhic victory for him because he wants to make money off the sign. I don't begrudge him that. I probably want to make money off the sign too. But that's where the difference comes down to. It's his desire to use his sign to make money, not to compel, not to display noncommercial messages, which he is fully allowed to display. He could sell it to a political campaign. What's that? Could he sell it to a political campaign? He could sell it for a political campaign. No doubt about it. I'm surprised he hasn't, given all the money flowing in this campaign, according to the newspapers. If there's no further questions, I will rest at this point. Thank you. Thank you. Your Honors, the case I was referring to is Mitcham v. Foster, 1972, 407 U.S. 225, cited on page 64 of the opening brief. Your Honors, you've heard that this is just about permits. Well, permits is another one of those loaded terms. If we're talking about a building permit, well, that's something different than a license. There's a case, City of Lakeview, U.S. Supreme Court case, which talks about the differences between building permits and licenses and the different characteristics of these. Building permit, you issue once and you build it. You're over, you're done, as long as you comply with the permit. A license, you have to renew, and you have to go before some board or other government person who has discretion to deny or not. Now, in California, a permit does grant certain rights that can vest, but for only as long as the permit lasts. How long did it last? Well, it's interesting, and this is kind of where we get to the nub of the case. The California Supreme Court case I'm referring to is Avco Community Developers, 17 Cal 3rd, 785, 795. It's in the briefs. But originally, the Caltrans permits lasted about a year. Now they're five years. Assuming for the sake of argument that these other billboard owners had the right to the permit and had the right to their billboard for the duration of the permit, why is it that they get automatically renewed each year? When the record shows Maldonado, whose billboard was built prior to the act, just like these others, he applies for a permit. Sorry. Nope, nope. You never had commercial advertising up there before. Did he ever have a before 19? Is it 67? Is that the magic year? Yeah, that's when. Did he have a state permit before that? The record is silent. I don't know of any permit that he had. But in any case, any permit would have expired, and in California vested rights are no greater than the term of the permit. That's the Avco case I was talking about. Are you saying that it's a futile matter for him to have had the permit because he had never gotten it renewed? Yes. Yes, Your Honor. Is there any proof on that, or is that just his claim? Do you have any proof about that, or is that just what you allege in this case? Well, the record shows that he applied for a permit and was denied. After 67 or before? Yes, yes. That's Maldonado 1, the state court case. Right, right. But that is like a day late and a dollar short, at least according to Caltrans, because it's not like Clare Chandler or the others who had a preexisting permit, and then there's the magic date. Well, what's the permit for? Is it a building permit? No. All of the billboards, Maldonado got his building permit from the city. And so what we're talking about is a license to put commercial speech on your billboard. And some other companies had a license to do that before. Their license would run out. They'd renew. Caltrans' unwritten policy is to automatically renew these licenses for the other company. But Maldonado, even though his billboard was existing and he's similarly situated before, you know, it was built before 1967. He had a billboard, so he had a building permit to put up the structure. Right. But he didn't have what they call a permit, what you call a license, in terms of this advertising, in terms of the billboard permit. You know, he didn't have that, correct? Right. Well, what happened is the whole landscape changed when the billboards specifically were treated as protected by the First Amendment. Okay. So whereas before these things were considered property rights, the permit would you'd have a property right until it expired, then you could apply for a new one. Now we're dealing with something different. We're dealing with liberty, the liberty to speak. And Caltrans is saying to some owners of billboards that were built before 1967, oh, sure, you can do commercial advertising on your stuff, on your billboard. But, Mr. Maldonado, you cannot. And that's where we get into the selective speaker equal protection complaint. With respect to the Redwood City issue, it's not right. There is a state court injunction against Mr. Maldonado under state law. Maldonado cannot go into Redwood City and say, let me do commercial advertising, because a state court injunction is forbidding him. I can't challenge the Redwood City ordinance until I get rid of the state court injunction against Maldonado. That I don't understand. Well, how can I go into Redwood City and say, give me a permit for off-site advertising, when there is an injunction against Maldonado restraining him from off-site advertising? Plus, Redwood City has never enforced its ordinance against, it's never sued Maldonado, it's never fined Maldonado. The only time we went before Redwood City was for this amortization thing, where they said, what kind of billboard do you have? And we said, well, currently we are restricted to non-commercial or on-site advertising. And so that was just a fact of how things were. I'd like to say that the prior restraint issue, you can only use a nuisance statute to strike down a, oops, I'm out of time. May I finish my thought? Do you want to conclude? Yes. You can only use a nuisance statute to strike down a content-based restriction if the speech being restricted falls within one of the narrow categories, fighting words, obscenity, that sort of thing. And the Supreme Court has said commercial speech isn't one of those categories. Thank you. Thank you. I think both counsel for your arguments, very helpful. The case of Maldonado v. Kempton is submitted. The next case for argument this morning is Allstate v. Moreland.
judges: McKeown, Callahan, Siler